In the Interest of A.N., a Minor

v.

Appeal of A.N., a Minor.

Superior Court of Pennsylvania.

Argued Oct. 26, 2011.

Filed Jan. 20, 2012.

Benjamin J. Steinberg, Pittsburgh, for appellant.

Mark B. Greenblatt, Pittsburgh, for Allegheny County, CYS, participating party.

Benjamin N. Zuckerman, Pittsburgh, for R.M., participating party.

BEFORE: MUSMANNO, ALLEN, and MUNDY, JJ.

OPINION BY MUNDY, J.:

Appellant, A.N. (Child), a dependent male child born December 13, 1995, appeals from the order entered May 2, 2011, placing him at George Junior Republic Residential Treatment Facility. After careful review, we affirm.

The juvenile court accurately summarized the factual and procedural history of this case as follows.

[Child] (D.O.B. 12/13/95) is the natural son of B.N. ("Mother") and R.M. ("Father"). On July 26, 2005, A.N. was adjudicated dependent by the Court of Common Pleas of Washington County. His case was subsequently transferred to Allegheny County on June 4, 2008.

[Child] is 15 years of age, and was living with Father in Allegheny County at the time of entry of the subject order. He was enrolled in South Park High School, where he was completing his freshman year. [Child]'s older brother also resides with Father, while his younger sister resides with Mother in Washington County.[1] [Child]'s brother is currently the subject of a consent decree, while his sister is also dependant.[2]

Both parents, and particularly Mother, have a long history of drug and alcohol abuse and domestic violence. All individual family members have received a multitude of services over the span of many years. At the August 9, 2010 Permanency Review Hearing it was revealed that [Child] was using marijuana, was disrespectful and defiant at home, and was failing to follow household rules.[3] [The juvenile court] ordered, *inter alia*, that [Child] be returned to his Father's care and that he follow all recommendations issued by the Allegheny

Forensic Associates ("AFA") evaluator, upon the completion of the evaluation.

In September 2010, the AFA evaluations, conducted by Dr. Terry O'Hara, were completed. The AFA report disclosed, *inter alia,* that [Child] admitted to marijuana and alcohol use. [Child] also reported that he had failed math and science during the past school year, but had taken those subjects in summer school and passed them. The evaluator opined that [Child]'s low achievement scores were historically related to his missing school and/or not taking school seriously. He did not believe that [Child] suffered from a learning disorder. The evaluator recommended, *inter alia,* that in home services continue to work in Father's home and that A.N. obtain substance abuse treatment.

At the October 18, 2010 Permanency Review Hearing, the caseworker testified that [Child] continued to use marijuana and was again failing several classes. [The juvenile c]ourt ordered, *inter alia,* that [Child] receive a drug and alcohol evaluation, follow all recommendations of the evaluator, and improve his grades.

A Family Service Plan ("FSP") was implemented on December 1, 2010 which included, *inter alia,* the following goals: 1. to achieve and maintain recovery from substance abuse problems; this included [Child] attending intensive out-patient treatment three (3) times per week; 2. to stabilize mental health problems; this included [Child] complying with all treatment recommendations of the AFA evaluator; 3. to maintain contact and cooperation with CYF and service providers, and; 4. to attend and perform satisfactorily in school. This included [Child]'s daily attendance with no unexcused absences or tardies, the completion of all homework, and obtaining passing grades in all classes.

At the December 13, 2010 Permanency Review Hearing, the testimony revealed that [Child] had obtained a D & A evaluation, wherein it was recommended that he attend outpatient treatment three (3) times per week. [Child], however, had failed to attend the outpatient treatment, alleging that he had no transportation, but admitting that he had made little effort to attend. It was further reported that [Child] was not doing well academically or behaviorally in school, had received several suspensions, and was causing daily class disruptions. Finally, [Child] was disregarding his Father's household rules. [The juvenile c]ourt again ordered [Child] to obtain drug and alcohol treatment, and to improve his grades and behaviors, both in school and at home. At both the October and December hearings, [the juvenile c]ourt warned [Child] that if he did not comply with the [juvenile c]ourt's Orders, he would be placed in a residential facility.

Another Permanency Review Hearing took place on March 7, 2011. [Child] showed some academic improvement. However, he had seven (7) disciplinary referrals since the December review hearing, one of which occurred a mere two (2) days after that hearing. His misbehavior at home also continued; he stayed out all night, lied about his whereabouts to his Father, solicited marijuana on Facebook, caused damage to a business property (writing on walls of a laundromat and pulling [a] fire alarm—no charges were filed, however, as restitution was made), and Father discovered drug paraphernalia in his room. [Child] did commence drug and alcohol treatment at Mon Yough on January 18, 2011, but tested positive for THC on the day of the hearing.

CYF recommended that [Child] be immediately placed in shelter pending appropriate placement in a group home. [The juvenile c]ourt permitted [Child] to remain with Father, but ordered that he attend the Academy Day and Evening Program, and participate in its drug and alcohol program.

CYF subsequently filed a Motion on April 18, 2011, to expedite [Child]'s review hearing date as he was not attending the Academy. [The juvenile c]ourt granted the motion and gave CYF permission to post [Child] for placement in a facility with an on-ground school.

At the expedited review hearing of May 2, 2011, the testimony confirmed that [Child] had refused to attend the Academy as ordered. In fact, after attending only two (2) days [Child] unilaterally decided not to return, as he considered the program to be a waste of his time. (N.T. 5/2/11, p. 43). Furthermore, his grades had declined at school and he had received nine (9) disciplinary referrals. As a result, [Child] had missed seventeen (17) days of school, due to out of school suspensions. [Child] was asked to take a drug test that day and was caught attempting to submit a urine sample that he had brought to court. (N.T. 5/2/11, p. 16). [Child] also continued to disregard his Father's rules, and punishments for violating those rules. (N.T. 5/2/11, p. 20).

[The juvenile c]ourt determined that placement of [Child] in a facility with an on[-]ground school was warranted and necessary. [The juvenile c]ourt ordered that he be placed at George Junior when a bed became available. Until that time, and because [Child] admitted to a marijuana dependence at the hearing, [the juvenile c]ourt ordered that [Child] receive a D & A evaluation within 24 hours and comply with the evaluator's recommendations. [The juvenile c]ourt further advised that, if deemed appropriate by any of the parties, depending upon the treatment commenced, [the juvenile c]ourt would entertain a motion to reconsider the placement.

On May 20, 2011, a bed became available at George Junior and [Child] was placed in that facility. On May 25, 2011, [Child] presented a motion for reconsideration through his guardian *ad litem.* At that time, it was revealed that [Child] had obtained a D & A evaluation, which resulted in a recommendation for outpatient treatment three (3) times per week. [Child], however, had determined that the treatment facility was inconveniently located and he, therefore, had failed to comply with the recommendation. [Child] advised the [juvenile c]ourt that he had scheduled another evaluation at a more conveniently located facility. [The juvenile c]ourt denied [Child]'s motion [by order filed May 25, 2011].

---

[1] All three children previously resided with Father, but [Child]'s sister was removed in 2008 upon allegations that [Child] and his brother had sexual contact with her.

[2] B.N. previously had her parental rights terminated to three (3) other younger children in Washington County. According to information from Washington County, those children have been adopted.

[3] [Child] was placed with his Mother for a brief period in the summer of 2010 and was residing with her at the time of the August 9, 2010 hearing.

Juvenile Court Opinion, 7/5/11, at 1–6.

On June 1, 2011, Child filed a notice of appeal from the May 2, 2011 juvenile court order placing him in George Junior Republic Residential Treatment Facility.[1] The

**1.** Although Child's notice of appeal indicates that a concise statement of errors raised on appeal was filed contemporaneously therewith as required by Pa.R.A.P. 1925(a)(2), and

juvenile court filed an opinion pursuant to Pa.R.A.P. 1925(a) on July 5, 2011.

On appeal, Child presents the following questions for our determination.

1. Whether ordering removal of a dependent child from parental custody through an in-home permanency review hearing is permitted under the Pennsylvania Juvenile Act and the Pennsylvania Rules of Juvenile Court Procedure, when the basis for removal lies in allegations and issues wholly unrelated to the original dependency adjudication?

2. Whether the [juvenile] court erred as a matter of law and abused its discretion in ordering the removal of a dependent child from parental custody absent a finding of clear necessity?

Child's Brief at 8.

■■■ Our standard and scope of review from an order in a dependency case are well settled.

We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In re C.M.T.*, 861 A.2d 348, 351 (Pa.Super.2004) (citations omitted).

■■■ In his first issue, Child argues that the juvenile court erred by ordering him placed in George Junior Republic Residential Treatment Facility on the basis of the original dependency petition because "the Agency's dependency concerns shifted from Mother's lack of care in 2005 to concerns regarding [Child's] behavior in 2011." Child's Brief at 19. Child explains as follows.

[Child] does not dispute the fact that he remains a dependent child pursuant to the original adjudication of dependency. Nor is it [Child's] position that the [juvenile] court is not authorized to order the placement of appropriate services or other therapeutic interventions upon a dependent child at a permanency hearing. However, when the [juvenile] court is requested to order the removal of a child by the Agency at a permanency hearing, due to the serious and drastic nature of removal, the permanency hearing is not the appropriate forum. In such a case, the procedural safeguards provided by the filing of a dependency petition, followed by an adjudicatory and dispositional hearing, ensure both a just result and adherence to the purpose of preserving "the unity of the family whenever possible," as set forth in the Juvenile Act. 42 Pa.C.S. § 6301(b)(1). This is especially true when the allegations predicating the removal are unrelated to and far removed in time from those necessitating the original dependency adjudication.

*Id.* at 15.

Regarding the disposition of a dependent child, section 6351(e) of the Juvenile

---

the juvenile court acknowledges receipt of the concise statement in its Rule 1925(a) opinion, the concise statement has not been included in the certified record supplied to this Court.

Act[2] provides in pertinent part as follows.

**(e) Permanency hearings.—**

(1) [t]he court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

42 Pa.C.S.A. § 6351(e).

In regard to when a child should be removed from parental custody, we have stated the following.

The law is clear that a child should be removed from [his/]her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with [his/]her family are unfeasible.

*In Interest of K.B.,* 276 Pa.Super. 380, 419 A.2d 508, 515 (1980). In addition, we have stated, "it is not for this Court, but for the trial court as fact finder, to determine whether [a child's] removal from [his/]her family was clearly necessary." *In the Interest of S.S.,* 438 Pa.Super. 62, 651 A.2d 174, 177 (1994).

Child argues that it is error for a juvenile court to order placement of a child outside the home at a permanency review hearing, especially on a basis unrelated to the originally adjudicated reasons for the dependency. Child's Brief at 15. Specifically, in this case, Child maintains that the juvenile court should have required CYF to file a second dependency petition alleging **Child's** behavior as the basis for dependency and placement rather than piggyback those new concerns onto a permanency review hearing for the original dependency petition, which was based on Mother's lack of parental care and supervision. *Id.*

Child cites our decision in *In re D.P.,* 972 A.2d 1221 (Pa.Super.2009) in support of his position. Child admits that the issues presented in *D.P.* differ from those presented in this case, but claims "the procedural posture of [*D.P.*] demonstrates the procedure [Child] requested be followed in the instant case." Child's Brief at 18. Child notes that *D.P.* contained a long and involved procedural history but argues a procedure employed by the local agency in that case should be controlling here. *Id.* In *D.P.,* the children had been determined to be dependent but were eventually allowed to return to the physical custody of their mother while the local agency retained legal custody. *D.P., supra* at 1222–1224. Independent of the regular permanency review hearings, the local agency filed petitions to remove physical custody of the children from the mother when she failed to comply with the family service plan. *Id.* at 1224. After ordering temporary physical custody of the children to the agency, the juvenile court addressed the agency's petitions at a dispositional hearing. *Id.* at 1225. "Because [the c]hildren had already been ruled dependent, a disposition hearing was commenced. . . . Following the [hearing], the [juvenile] court entered orders . . . that found [the children] continued to be dependent, and

---

**2.** 42 Pa.C.S.A. §§ 6301–6375.

which retained legal and physical custody in the [local a]gency."[3] *Id.* From this example, Child concludes that "prior to ordering an already adjudicated dependent child from parental custody, the filing of a dependency petition, followed by a request for an adjudication hearing, is the appropriate and just process required by both the Juvenile Act and the Rules of Juvenile Court Procedure." Child's Brief at 21. There is nothing in *D.P.*, however, that mandates the procedure described, and as discussed herein, we decline to interpret such a requirement. Child also argues that this result is required in order to conform to the appropriate burden of proof.

> The purpose of an adjudicatory hearing is to determine whether the allegations contained in a dependency petition are supported by clear and convincing evidence. 42 Pa.C.S. § 6341(c); Pa. R.J.C.P. 1408. Only after this burden is met, is the [juvenile] court permitted to proceed to the dispositional hearing, which then permits the court to order what is necessary under the circumstances, including the removal of the dependent child from parental custody. 42 Pa.C.S. §§ 6341, 6351. In contrast, permanency hearings are conducted for the purpose of:
>
> > ■ [D]etermining or reviewing the permanency plan of the child, [2] the date by which the goal of permanency for the child might be achieved and [3] whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.
>
> 42 Pa.C.S. § 6351(e); Pa.R.J.C.P. 1608. Clearly, unlike the adjudicatory hearing, the purpose of the permanency hearing

is not to determine whether allegations, such as those cited by the [CYF] regarding [Child], are supported by clear and convincing evidence, but to review permanency planning, permanency goals, and determine whether, if placed outside the home, such placement continues to be appropriate for the child.

Child's Brief at 22.

Child reads the sections of the Juvenile Act that he quotes above to require the filing of a new dependency petition every time there is a change in or an addition to the initial allegations underlying a claim of dependency. Under Child's reading of the statute, the case of a single child could require a juvenile court to maintain multiple dockets running simultaneously, each one tracking a particular allegation of dependency and each one requiring separate dependency reviews. Additionally, the certified record in such instances would not be readily available to a reviewing court. This would not be a problem where, as here, the evidence of the later allegation of dependency is a part of the original record. If we were to agree with Child, we would be compelled to remand this matter to the juvenile court with instructions to require CYF to file a new dependency petition. That new petition would trigger at least one more hearing at which the evidence already presented to the juvenile court would be placed before that court once again. The resulting record would, in all respects, resemble the record that is before us now and do no more than waste judicial resources by mandating a duplication of effort.

Our reading of the pertinent statutes and rules leads us to conclude that neither the legislature nor our Supreme Court in-

---

**3.** After removing physical custody of the children from the mother, the juvenile court ordered the goal changed to adoption. The mother appealed this decision on various bases not pertinent to this appeal. *D.P., supra* at 1222–1224.

tended such a constricted view of a juvenile court's options at a permanency hearing. The comment to Pa.R.J.C.P. 1608 emphasizes the juvenile court's flexibility in conducting hearings to address specific concerns.

> In addition to the permanency hearing contemplated by this rule, courts may also conduct additional and/or more frequent intermittent review hearings or status conferences, **which address specific issues based on the circumstances of the case,** and which assist the court in ensuring timely permanency.

*Id.* comment (emphasis added). In describing the scope of an order stemming from a permanency review hearing, the Juvenile Code provides the following.

> **(g) Court order.**—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement **or other disposition** which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(g) (emphasis added).

■ Accordingly, contrary to Child's assertion, there is nothing in the Juvenile Code or the Pennsylvania Rules of Juvenile Court Procedure that precludes the juvenile court entering a new disposition order at a permanency review hearing provided the appropriate findings are made. Those findings include the following.

> **(b) Required preplacement findings.**—Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:
>
> (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and
>
> (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or
>
> (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or
>
> (4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and
>
> (5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

42 Pa.C.S.A. § 6351(b). Instantly, as discussed more fully *infra*, the juvenile court complied with these requirements.

■ As noted above, Child complains further that 42 Pa.C.S.A. § 6341(c) requires a juvenile court to find a child dependent based on allegations supported by clear and convincing evidence, a standard not applicable to the subsequent permanency review hearings. Child's Brief at 21–23. We agree that the clear and convincing evidence standard applies to new allegations of dependency. We, however, see no impediment in our law to a juvenile court's application of the clear and convincing standard to allegations of additional

bases of dependency presented to it at subsequent dependency review hearings.

The record in this case reveals that CYF has presented evidence of behavior on Child's part that might warrant his placement in a residential facility since at least August of last year. In addition, at both the October and December permanency hearings, the juvenile court warned Child that, if he did not comply with the juvenile court's orders, the juvenile court would place him in such a facility. Child admits that he is dependent and admits that the juvenile court has the power to address treatment of his drug and alcohol, mental health and behavioral issues. The level of proof adduced at the review/disposition hearings met the clear and convincing standard. The fact that the focus of Child's dependency has shifted from factors that acted upon Child to Child's actions does not warrant the filing of a new dependency petition and the holding of additional hearings. Accordingly, Child's first issue is without merit.

■ In his second issue, Child argues that the juvenile court removed him from his parents without finding that that removal was a clear necessity. Child's brief at 30. In making this argument, Child reviews the evidence presented to the juvenile court and asks us to reach a different conclusion than that reached by the juvenile court. *Id.* at 31–39. However, we must accept the juvenile court's findings that are supported by competent evidence of record, and we defer to the juvenile court on issues of credibility and weight of the evidence. "[I]f competent evidence supports the trial court's findings we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super.2003) (citation omitted).

■ In addition, Child fails to cite any case law that supports his contention that his removal was unnecessary. "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29–30 (Pa.Super.2006) (internal citations omitted).

■ Finally, "it is not for this [C]ourt, but for the trial court as fact finder, to determine whether [a child's] removal from [his/]her family was clearly necessary." *In the Interest of S.S.*, 438 Pa.Super. 62, 651 A.2d 174, 177 (1994). Clear necessity can be established only after a juvenile court has determined that alternate services that would allow a child to remain with his family are unfeasible. *In Interest of K.B.*, 276 Pa.Super. 380, 419 A.2d 508, 515 (1980). Our review of the record reveals that CYF has provided a broad range of services to Child and his parents since he was adjudicated dependent in 2005 in an attempt to keep Child placed with his parents, all to no avail. There is sufficient clear and convincing evidence in the record to support a finding of unfeasibility, as well as a finding of clear necessity for removal. Since the juvenile court's findings are supported by the record, we will not disturb them on appeal. *T.B.B.*, *supra*; *S.S.*, *supra*. Child's second and final issue is without merit.

Accordingly, for all the foregoing reasons, we affirm the juvenile court's May 2, 2011 order.

Order affirmed.