J-S61001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.H., FOSTER PARENT | No. 1191 EDA 2018 |

Appeal from the Order Entered March 22, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002109-2015

BEFORE: BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED DECEMBER 20, 2018**

T.H., Former Kinship Parent ("FKP"), appeals *pro se* from the March 22, 2018 order that granted retroactively the judicial removal from FKP of T.H. ("Child"), born in July of 2015, based upon FKP's lack of standing. After review, we reverse.

The trial court provided the following factual and procedural history of this case, stating:

> Philadelphia Department of Human Services ("DHS") became involved with this family on July 27, 2015, after DHS received a General Protective Services ("GPS") report, which alleged that Child's biological mother had tested positive for marijuana; biological mother only had one scheduled prenatal appointment; biological mother considered placing Child for adoption but had a change of heart; biological mother considered sending Child to live with relatives; biological mother admitted to marijuana use; biological mother was not prepared to care for Child; biological mother wanted her relative, FKP, to care for Child. This GPS report was substantiated. On July 29, 2015, DHS obtained an Order of Protective Custody ("OPC") for Child and she was placed in the care of FKP. Child was adjudicated dependent on August 19, 2015 and the trial court found that both biological mother and biological father wanted to sign voluntary relinquishment of parental rights petitions as to Child. Biological mother signed a petition to voluntarily relinquish her parental rights to Child on

November 4, 2015, and Father signed a petition to voluntarily relinquish his parental rights to Child on November 5, 2015.

Child remained in FKP's care until February 3, 2017. On that date, the trial court ordered Child to be removed from FKP's home and be placed forthwith due to safety concerns. Child was removed from FKP's home on February 6, 2017. At the permanency review hearing on March 21, 2017, FKP was granted supervised visits with Child at the agency twice per week. At the permanency review hearing on July 18, 2017, the trial court granted temporary physical custody to FKP with DHS and the Community Umbrella Agency ("CUA") to supervise. Kinship care was re-implemented into FKP's home in November 2017.

In November 2017, CUA visited FKP's home. CUA noticed that although FKP's home was clean, there were minimal things in the home for Child. Child's bedroom only included a bed and limited clothing on the hangers in the closet. Additionally, CUA noticed that there was no food in the home. When CUA questioned FKP, FKP explained that she and her husband were trying to sell their home and the family went out to eat every night. Later in November, CUA subsequently visited FKP in her new apartment. CUA observed minimal things in the home, similar to the previous home visit. CUA did not notice any signs of a recent move. In the refrigerator, CUA only found some water bottles, juice and a couple [of] fruit cups. CUA also only observed a couple [of] boxes of cereal in the cupboards. When CUA visited Child's bedroom, CUA noticed that Child's bed was a small cot with a mattress with no other furniture. Child's closet had bins but minimal clothing available for Child. FKP informed CUA that items for the home were on their way, including a bed for Child. CUA found the home to be appropriate at this visit, taking FKP's recent move into consideration.

Between November and December 2017, DHS received a GPS report. On December 5, 2017, the foster care agency visited FKP's home and informed CUA on December 11, 2017 that there was no food in the refrigerator; there was no car seat for Child; there were concerns regarding Child's clothing; Child was still sleeping on a cot and there was no new bed in the home; there were discrepancies with the family profile; DHS would not approve the family profile. CUA reached out to FKP after receiving the report from the foster care agency to arrange a visit and to address the allegations, but FKP informed CUA that they could not visit FKP's

home because she was in Florida with Child until December 22, 201[7]. CUA indicated that FKP never received permission to take Child to Florida and CUA was unaware that Child was in Florida.

On December 21, 2017, CUA determined that Child was to be removed from the home. CUA and DHS visited FKP's home on December 22, 201[7]. CUA conducted a walkthrough of FKP's home. CUA observed that Child was still sleeping on a cot with a stained mattress. Child's bedroom still had no other furniture and Child still only had minimal clothes available in the closet. CUA also observed that the refrigerator had the same contents that [were] observed in November 2017. FKP and DHS['s] conversation had escalated after FKP was informed that Child would be removed from the home and CUA contacted the police to assist with the removal. Child was removed from FKP's home and placed into a different foster home on December 22, 201[7].

On January 18, 2018, a status review hearing was held for Child. The trial court ordered FKP [to] remove all social media posts related to Child, including pictures, images, and videos, and that FKP was not permitted to post anything related to Child in the future. A judicial removal hearing was scheduled for March 22, 2018.

On March 22, 2018, the trial court heard testimony from the CUA case manager, the DHS permanency worker, the CUA NET supervisor, the family profile writer, and FKP. The trial court granted the judicial removal retroactive to December 22, 2017. The trial court additionally determined that Child should not be returned to FKP's care and that FKP has no standing under the dependency petition. On April 19, 2018, FKP filed this appeal.

Trial Court Opinion (TCO), 6/29/18, at 1-3.

FKP filed this timely appeal *pro se* accompanied by a concise statement of errors complained of on appeal as directed by Pa.R.A.P. 1925(a)(2)(i). She filed a *pro se* brief; however, no responsive briefs were filed with this Court. In its opinion, the trial court discussed its reasoning for concluding that the issues raised by FKP were without merit. However, most pertinent to this

appeal is the court's conclusion that "FKP was entitled to participate in the permanency review hearing for Child on March, 2018, as she was [] both the former kinship parent and former pre-adoptive parent to Child but [that] FKP was not a party to the dependency proceeding for Child." TCO at 5. The court further stated that "[a]lthough FKP is not a party to the dependency proceedings for Child and FKP was not entitled to counsel at the permanency hearing, the trial court allowed FKP to be heard." *Id.* at 6.

FKP sets forth the following issues for our review in her brief, which mirror the issues contained in her Rule 1925(b) statement:

1. Did [the trial court] err in law by stating [FKP] had no standing in the judicial removal hearing and fail[ing] to consider that [FKP] stood in the role as the sole parent for two years and filed the petition to adopt?

2. Did the trial court err in law [by] denying [FKP] the right to an attorney which could have allowed for testimony to be presented, and a fair cross[-]examination of claims since [the] 1-18-2018 court transcript confirms [a previously-presiding judge] agreed that [FKP] could have 3 witnesses and a lawyer?

3. Did [the trial court] err in not considering that DHS failed to get a court order for removal of [C]hild from her prospective adoptive home and failed to present any evidence to the record to confirm safety issues or to corroborate their claim that [FKP] did not have permission to take a holiday vacation?

4. Did [the trial court] err in law by not considering if reasonable efforts were made by the Philadelphia Department of Human Services and NET Community Care to prevent the removal on 12-22-2017 after they allegedly received a safety complaint from a NET Employee on December 11, 2017?

5. Did [the trial court] err in law by determining that the removal was in the best interest of [C]hild since [C]hild has been placed into two different foster care homes in less than 3 months after

the removal and is now exhibiting behavioral and speech issues that were not present on and prior to the removal?

FKP's brief at 2-3.[1]

Generally, our scope and standard of review for dependency cases is as follows:

We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In the Interest of A.N.*, 39 A.3d 326, 330 (Pa. Super. 2012) (quoting *In re C.M.T.*, 861 A.2d 348, 351 (Pa. Super. 2004) (citations omitted)).

_____

[1] Although FKP's brief separately lists the five issues noted above, the argument section of her brief contains only a single section, which does not comport with Pa.R.A.P. 2119(a). That section of the rules states:

**General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part … the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). However, in light of the fact that the trial court likewise consolidated its discussion of the issues, we accept FKP's method of presenting her arguments.

FKP first argues that the trial court erred in denying her standing to contest DHS's decision to remove Child, who had been placed with her in anticipation of adoption.[2] We agree. Generally, foster parents do not have standing to participate in dependency proceedings. **See** 42 Pa.C.S. § 6336.1(a) ("[N]othing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court."). However, the statutory scheme does not foreclose a preadoptive foster parent from challenging the removal of a child from his or her care. In **In Interest of M.R.F., III**, 182 A.3d 1050, 1056 (Pa. Super. 2018), we reiterated that

> our case law has carved a narrow exception to permit the limited participation of a foster resource who has attained prospective-adoptive status: prospective adoptive parents have standing to contest the child welfare agency's decision to remove a child it placed with them in anticipation for adoption. **See In re Griffin**, … 690 A.2d 1192 ([Pa. Super.] 1997); **Mitch v. Bucks County Children and Youth Social Service Agency**, … 556 A.2d 419, 423 ([Pa. Super.] 1989) (prospective adoptive parents have standing in juvenile court to contest agency's decision to remove foster child from their physical custody).

Moreover, in the **Griffin** case, this Court explained the underlying rationale for this narrow exception, stating:

> [P]rospective adoptive parents, unlike foster parents, have an expectation of permanent custody which, though it may be contingent upon the agency's ultimate approval, is nevertheless genuine and reasonable. Because of this expectation of

---

[2] An issue regarding standing to participate in dependency proceedings is a question of law warranting plenary review, and our scope of review is *de novo*. **In Interest of J.P.**, 178 A.3d 861, 865 (Pa. Super. 2018).

permanency, prospective adoptive parents are encouraged to form emotional bonds with the child from the first day of the placement. **By removing the child from the care of the prospective adoptive parents, the agency forecloses the possibility of adoption**. In light of the expectation of permanent custody that attends an adoptive placement, **an agency's decision to remove a child constitutes a direct and substantial injury to prospective adoptive parents**. Because prospective adoptive parents, unlike foster parents, suffer a direct and substantial injury **when an agency removes a child from them**, we see no reason in law or policy why we should limit their standing to sue for custody.

*M.R.F., III* at 1056 (quoting *Griffin*, 690 A.2d at 1201) (emphasis added in *M.R.F., III* opinion). Accordingly, it is clear that preadoptive parents have standing in juvenile court to contest an agency's decision to remove a foster child from their physical custody.

As noted above, the juvenile court conceded that FKP was a preadoptive parent prior to DHS's decision to remove Child from her care. Nevertheless, the court held that FKP was not entitled to participate in the judicial removal hearing because she was not a party to the dependency proceedings. Rather, she was limited to answering questions posed by the court and the other parties. However, based upon our discussion *supra*, we are compelled to conclude that the trial court erred as a matter of law in limiting FKP's involvement at the dependency hearing.

In conjunction with our ruling that case law dictates that a preadoptive parent is a party to a dependency proceeding and is allowed to participate fully, we also recognize that the Juvenile Act, 42 Pa.C.S. § 6337, provides in part that "a party is entitled to representation by legal counsel at all stages of

- 7 -

any proceedings under this chapter and if [she] is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for [her]." Therefore, having concluded that FKP meets the requirements of party status, she is likewise entitled to counsel. Her attorney should not have been excluded from the hearing.

Accordingly, for the reasons stated *supra*, we are compelled to reverse the trial court's order so that FKP, as a preadoptive parent, can participate fully in the dependency proceedings concerning DHS's decision to remove Child from her care and is entitled to full representation by counsel.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/18