J-A20017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 330 WDA 2021 |

Appeal from the Order Entered February 27, 2021
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-DP-0000745-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: October 21, 2021**

The Allegheny County Office of Children, Youth and Families ("CYF") appeals from the order, entered February 27, 2021, adjudicating as dependent V.N. ("Child") (born in April of 2012), and returning Child to the care of Maternal Grandparents. Following our review, we affirm.

The juvenile court summarized the facts and procedural history as follow:

> V.N. is a 10[-]year-old boy who resided in the custody of Maternal Grandparents from the age of three. In the Spring of 2020, V.N.'s half-siblings, E.N. (DOB [May 2017]) and M.N. (DOB [February 2020]) joined the household, after CYF removed them from the care of their mother, K.N. ("Mother"). This court adjudicated E.N. and M.N. dependent on April 30, 2020. The court ordered that both children remain placed with Maternal Grandparents, who served as kinship foster parents.
>
> In late October 2020, CYF obtained an Emergency Custody Authorization for V.N. and M.N. after receiving a report that three-year-old E.N. had been discovered unresponsive and rushed to the

emergency room. V.N. and M.N. were removed from Maternal Grandparents' care and placed with M.O. ("Maternal Great Aunt").

Tragically, E.N. never regained consciousness and passed away a few days after his admission to the hospital. The cause of E.N.'s death remains undetermined. However, in the course of E.N.'s treatment at Children's Hospital, Dr. Adelaide Eichman observed bruises on E.N. that were consistent with physical child abuse. A Childline investigation into suspected physical abuse of E.N. resulted in indicated reports regarding both Maternal Grandparents.

As part of the investigation into E.N.'s death, V.N. participated in a forensic interview at the Children's Advocacy Center at Children's Hospital on October 26, 2020. In the interview, V.N. disclosed considerable ongoing physical discipline of E.N. by both Maternal Grandparents. However, V.N. did not allege that Maternal Grandparents mistreated him in any way. V.N. further stated that Maternal Grandparents did not use any form of physical discipline on him.

On February 16, 2021, the court conducted an adjudicatory hearing in the matter. The court heard testimony from Dr. Adelaide Eichman, E.N.'s treating physician and the primary witness related to the adjudicatory portion of the hearing. The court admitted as CYF exhibits a written summary of V.N.'s forensic interview and the video recording of the interview. Based on the testimony and exhibits, the court adjudicated V.N. dependent.

The court immediately proceeded to consider disposition and heard testimony from CYF caseworker Glenice Anderson, Mother, and Maternal Great Aunt. CYF recommended that V.N. remain in placement and that the court permit a change in placement as Maternal Great Aunt was not in a position to care for V.N. long-term. The caseworker reported that V.N. was engaged in individual therapy, attending school in person, and having supervised visitation with Maternal Grandparents. When pressed by the court to identify any safety threat to V.N. if he were to return to Maternal Grandparents' care, the caseworker emphasized concern that Maternal Grandparents might subject V.N. to physical discipline, even though she acknowledged that no reports of such conduct existed. The caseworker did not identify any other reason V.N. could not return home.

Maternal Great Aunt stated that Child had been doing well in her care, but that she recently noticed a change in his mood. Child was withdrawn and sad a lot of the time, and he very much wanted to return to Maternal Grandparents' home. Maternal Great Aunt expressed how important it was to Child that he be reunited with Maternal Grandparents, noting that it was extremely difficult for Child to be away from them.

Following the testimony, the court ordered that Child return to Maternal Grandparents' care. The court conditioned V.N.'s return to Maternal Grandparents upon his continued attendance at school in person and his continued participation in his individual therapy.

Trial Court Opinion (TCO), 4/15/2021, at 2-5 (footnotes citing the record omitted).

The court then explained its reasoning for concluding that the issue raised by CYF in its brief on appeal was without merit. Specifically, CYF raised the following issue:

Whether the trial court abused its discretion and/or erred as a matter of law when it ordered that V.N. be returned to the care of his [M]aternal [G]randparents when there was a clear necessity for him to remain out of their care and return ran contrary to his best interest as his safety could not be assured in the home of his [M]aternal [G]randparents?

CYF's brief at 4.

Our scope and standard of review in dependency cases is as follows:

We must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's

responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In the Interest of A.N.*, 39 A.3d 326, 330 (Pa. Super. 2012) (quoting *In re C.M.T.*, 861 A.2d 348, 351 (Pa. Super. 2004) (citations omitted)). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004). Moreover, "the dependency of a child is not determined 'as to' a particular person, but rather must be based upon two findings by the trial court: whether the child is currently lacking proper care and control, and whether such care and control is immediately available." *In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). Furthermore, the court may make an order of disposition that is "best suited to the safety, protection and physical, mental, and moral welfare of the child…." 42 Pa.C.S. § 6351(a).

As previously noted, the trial court discussed the testimony of various witnesses. Those witnesses included Dr. Adelaide Eichman, Glenice Anderson, a CYF caseworker, K.N., Mother, and M.O., the Maternal Great Aunt.[1] Based on this testimony, the court explained the reasons for finding Child dependent. Then, the court proceeded to consider the disposition of Child and placed him in Maternal Grandparents' care, stating:

---

[1] Child's forensic interview and the video recording of that interview were also included in the evidence before the court.

In considering V.N.'s disposition, the court accorded great weight to the undisputed evidence of V.N.'s emotional needs. At the time of disposition, V.N. had been removed from Maternal Grandparents for over three months, and CYF was recommending placement in a new foster home with caregivers with whom V.N. had no established relationship. Maternal Great Aunt credibly testified to the negative impact of V.N.'s separation from his Maternal Grandparents on his mental health. V.N. had become withdrawn and sad since being placed with Maternal Great Aunt. He started isolating himself from the rest of the family and "basically started to shutdown." Maternal Great Aunt reported that V.N. was feeling "sad all of the time, all day long," would count the minutes until his supervised visits with Maternal Grandparents, and prayed every night for return to Maternal Grandparents' home. V.N. regularly attended therapy to help him cope with the situation.

When asked to explain how Maternal Grandparents pose a safety threat to V.N., the CYF worker identified only speculative concerns. Recognizing the absence of any evidence that Maternal Grandparents ever mistreated V.N., the CYF worker expressed concern that they might in the future, stating "it's unclear if Grandparents would initiate any corporal punishment" of V.N. The court properly concluded that this speculative concern did not establish clear necessity for placement outside Maternal Grandparents' home.

The court's disposition provided for V.N.'s safety. V.N. remains under CYF and court supervision, which ensures multiple opportunities for the parties to monitor his well-being. The court ordered that he continue to attend school in person, where he interacts with additional adult teachers and staff who observe him frequently, can report any concerns, and **must** report any suspicions of child abuse. Finally, he participates in regular therapy and has established a positive rapport with the therapist, yet another adult who bears a legal obligation to report concerns for V.N.'s safety. The court properly determined that these safeguards constituted feasible alternatives to placement.

The court's decision in this matter represents a quintessential exercise of discretion. The court considered evidence of ongoing harm to V.N.'s mental and emotional well-being caused by separation from Maternal Grandparents. The

- 5 -

court considered evidence of Maternal Grandparents' mistreatment of V.N.'s younger half-sibling. The court considered the lack of any evidence that Maternal Grandparents ever mistreated V.N. The court concluded that the evidence of actual harm to V.N.'s mental and emotional well-being weighed most heavily in determining V.N.'s disposition. Consequently, the court fashioned a disposition that alleviated that harm while putting in place safeguards to ensure monitoring and oversight of V.N.'s safety and well-being. The court acted well within its discretion in reaching this determination.

TCO at 6-8 (footnotes citing the record omitted) (emphasis in original).

We agree. Based upon the law set forth above and a review of the record in this case, we conclude that the trial court did not abuse its discretion in its disposition that placed Child in the custody of Maternal Grandparents. The trial court's findings are supported by the testimony and evidence presented at the hearing. CYF's arguments generally attack the trial court's credibility determinations and disregard the evidence before the court that contradicts its position.[2] The court's decision clearly considered the

_____

[2] CYF orally argued and included in the argument section of its brief the contention that the trial court should have ordered services to be provided to Maternal Grandparents to ensure Child's safety. However, that contention was not included in the issue as stated in CYF's Pa.R.A.P. 1925(b) statement of errors complained of on appeal; nor was it contained in CYF's issue as set forth in its brief. Specifically, we note that Rule 1925(b)(4)(ii) directs that the statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." The essence of the trial court's decision recognized CYF's safety concerns and explained the safeguards it determined would ensure Child's well-being. Any suggestion that the trial court should have provided for services to Maternal Grandparents was not evident from the sole issue raised by CYF. Thus, that argument is waived, but certainly can be raised by CYF at the next hearing before the trial court.

safeguards it found would be in place that would serve Child's best interests.

CYF has not convinced this Court otherwise.

  Order affirmed.
Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2021