J. S53031/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF:  S.G., A MINOR : IN THE SUPERIOR COURT OF
                                        :             PENNSYLVANIA
                                          :
APPEAL OF:  F.J.T., III, FATHER      :         No. 1189 EDA 2017

Appeal from the Order Entered March 24, 2017,
in the Court of Common Pleas of Carbon County
Domestic Relations Division at No. CP-13-DP-0000002-2017

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 28, 2017**

F.J.T., III ("Father"), appeals from the permanency review order entered March 24, 2017, in the Court of Common Pleas of Carbon County by the Honorable Joseph J. Matika, which continued placement of his minor child, S.G. ("the Child"), a female born in April of 2003.[1]  After careful review, we affirm.

By way of background, on October 7, 2016, the Child was evaluated at Gnaden Huetten Memorial Hospital due to injuries to her face and suicidal ideation.  The Child told hospital staff that Father caused the injuries, and alleged child abuse report was made to Childline.  A psychiatrist evaluated the Child, and determined the Child needed inpatient psychiatric care, but no beds were available at the time.  The Child remained in the emergency

---

[1] F.P. ("Mother") was incarcerated at the time of the permanency review hearing.  In the instant appeal, Mother, through counsel, filed a joint brief with CYS and the guardian *ad litem* for the Child.

department until she was discharged to Mother on October 11, 2016 because CYS requested the Child not be discharged to Father. The Child remained in Mother's care until January 9, 2017, when there was a physical altercation between the Child and Mother, which led to Mother's incarceration. The Child was removed from Mother's home, at Mother's request, and placed with a friend in Coaldale until CYS took custody of the Child on January 17, 2017. The trial court summarized the relevant procedural and/or factual history from the time CYS took custody of the Child as follows:

> On January 17, 2017, the Carbon County Office of Children and Youth Services ["CYS"] sought and was granted an ["]Order of Court to take the Child into Emergency Shelter Care["] based upon a call from Father that he believed the Child needed to be placed into a diagnostic facility for treatment of a mental health issue. That [o]rder placed the Child at Youth Services Agency ["CYA",] pending an Emergency Shelter Care Hearing which eventually occurred on January 18, 2017. At that hearing, it was determined that the Child be continued in Emergency Shelter Care at [CYA,] pending an acceptance and placement into a diagnostic setting. Thereafter, [CYS] sought placement for the Child in such a setting while filing a Dependency Petition on January 19, 2017, alleging that the Child was "without proper parental care or control" as that term is defined.
>
> On February 27, 2017, this [c]ourt conducted a Dependency Hearing and[,] after taking testimony, adjudicated the Child a dependent child on the basis that the Child was "without proper care or control, subsistence, education as required by law, or other care or control necessary for [her] physical, mental or emotional health, or morals." This [c]ourt further

> ordered that the Child remain in a residential facility. However, it directed [CYS] to schedule an "early" Dependency Review Hearing after both sides had an opportunity to review a psychological report from Dr. Abdo G. Saba, M.D., which was referenced in the dependency hearing, but had not yet been obtained by Counsel for [CYS].
>
> As a result, a Dependency Review Petition was filed on March 7, 2017. The basis for this was to review the placement of the Child, consider the report of Dr. Saba and determine an appropriate disposition of the Child's placement going forward.

Trial court opinion, 5/10/17 at 1-3 (footnotes omitted).

On March 24, 2017, the trial court held an initial permanency review hearing. At that hearing, the trial court heard testimony from Jill Geissinger, who is a CYS case supervisor, and the Child. Father also testified on his own behalf. That same day, the trial court entered an order continuing the Child's dependency. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on May 10, 2017.

Father now raises the following issues for our review, which we have re-ordered for ease of disposition.

> [1.] Whether the trial court erred by not returning the Child to Father's custody when [CYS] provided no evidence of [Father's] unfitness or that the Child remained "without proper parental care and control" and finding that placement continued to be "necessary and appropriate[?]"

[2.]    Whether the [trial] court erred in finding that the Child's placement was appropriate when [CYS] failed in its duty to ensure that the Child's educational, behavioral[,] and mental health needs are met[?]

[3.]    Whether the trial court erred by not returning the Child to Father's custody when it was the least restrictive means of providing protection for the minor Child, contrary to the mandates of the Child Protective Services Law[, ]23 Pa.C.S.[A] § 6301 et seq.[,] and the Juvenile Act[, ]42 Pa.C.S.[A]. § 6301 et seq.[?]

[4.]    Whether the [trial] court erred in granting the recommendations of [CYS] in that the recommendations are contrary to the Juvenile Act[, ]42 Pa.C.S.[A] § 6301[,] and specifically [S]ection 6301(b)(1)[,] in that one of the purposes of the [Juvenile] Act is to preserve the unity of the family whenever possible[?]

[5.]    Whether the trial court erred by finding that [CYS] exercised reasonable efforts to preserve or reunify the family when there was undisputed evidence that no services were made available nor were reunification efforts made by [CYS?]

[6.]    Whether the trial court erred in finding Father made minimal progress toward alleviating the circumstances[,] which necessitated placement because he cannot complete his goals without insurance when there are no goals requiring Father to have insurance on himself, the Child has coverage[,] and lack of insurance is not a basis for maintaining placement or finding continued dependency[?]

[7.]    Whether the [trial] court erred by not making a finding regarding the likely date for which the goal of return to parent might be achieved as required by the Juvenile Act[?]

Father's brief at 6-7 (capitalization omitted).

We must first determine whether Father's appeal is properly before this court. Pursuant to 42 Pa.C.S.A. § 742, this court has jurisdiction over appeals from final orders. With respect to dependency proceedings, an order granting or denying a goal change shall be deemed a final order when entered. *See In re H.S.W.C.-B*, 836 A.2d 908, 911 (Pa. 2003). In reversing the order of this court that quashed an appeal from an order denying a goal change on the basis that it maintained the *status quo* and was not a final order, our supreme court explained,

> Maintaining the *status quo* could put the needs and welfare of a child at risk. . . . [T]he denial of goal changes which are in the best interest of the child should not be sheltered, permanently, from independent review: [As a practical matter], these petitions go to the same trial judge. If a trial judge erroneously denies these motions and improperly maintains the *status quo*, and keeps doing that on periodic review, such an improper order will *never* be subject to appellate review.

*Id.* at 910 (internal quotations and citation omitted).

Instantly, the trial court, while maintaining the *status quo* by continuing the Child's dependency status, was acting for the Child's needs and welfare by moving her from her placement at CYA to a foster home. Father argues that the continuation of the dependency and the Child's placement interferes with the Child's education, behavioral, and mental health needs. As such, we find that the trial court's order is final and

appealable pursuant to *In re H.S.W.C.-B*. We now turn to the merits of Father's appeal.

Our standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004), quoting *In re Diaz*, 669 A.2d 372, 375 (Pa.Super. 1995).

Father first argues the trial court erred by not returning the Child to Father's custody as CYS provided no evidence of Father's unfitness or that the Child remained "without proper parental care and control" and finding that placement continued to be "necessary and appropriate." (Father's brief at 17.) Father maintains that the Child's initial dependency determination was based on Father's alleged abuse of the Child, and Mother's incarceration. (*Id.* at 19.)

Section 6302 of the Juvenile Act, in pertinent part, defines a "dependent child" as one who is:

> without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302

In order to adjudicate a child dependent under the Juvenile Act, a court must determine that the statutory definition of "dependent child" has been met by clear and convincing evidence. *In re L.V.*, 127 A.3d 831 (Pa.Super. 2015). To meet the clear and convincing standard, the court must determine whether the child is presently without proper parental care or control and if this care and control is immediately available to the child. *In re J.J.*, 69 A.3d 724 (Pa.Super 2013).

In its opinion, the trial court stated:

> For purposes of this case, only the first sentence of this definition is applicable.
>
> In accordance with 42 Pa. C.S.A. § 6351(a)(2)(iii), upon finding on February 27, 2017 that the Child was in fact "dependent," this [c]ourt directed that the Child be placed with "a public agency authorized by law to receive and provide care for the child," i.e., [CYS] [c]ustody for placement in a residential facility. That [o]rder was subject to an early review which occurred on March 24, 2017. It is at this hearing Father is claiming the [c]ourt erred regarding continuing the Child in dependency status and keeping her in a placement outside of his home.

Trial court opinion, 5/10/17 at 8-9.

The trial court acknowledged that CYS failed to present evidence of Father's unfitness, but that it ultimately found the Child dependent because the Child was without proper parental care or control. (*Id.* at 15.) The trial court further stated:

> there was testimony from the Father that[,] while the Child was in his care and control, he recognized that the Child was suffering from mental health issues as far back as July 2016. As a result, Father testified that he had the Child hospitalized on two (2) occasions and also turned to [Carbon-Monroe-Pike Mental Health and Development Services,] but was unsuccessful in obtaining help through that agency due to insurance issues. Unfortunately, these efforts failed to address the Child's mental health issues, prompting a removal of the Child from his home for placement in the Child's Mother's home on October 7, 2016. From that date until the Child was taken into Emergency Shelter Care, there apparently were little, if any, services provided to the Child to address her mental health needs. Accordingly, this [c]ourt's initial determination[,] finding the Child dependent and continuing such dependency status as a result of the March 24, 2017 permanency review hearing[,] was grounded in the failure of the Father to provide adequate and appropriate care for the Child to address her mental health needs at a time when those services were clearly available. Additionally, based upon Dr. Saba's report, the Child was in need of some type of psychotherapy to assist in addressing her diagnosis of dysthymic disorder and reactive attachment disorder. This further evidences a need for help, which was not previously nor adequately provided by Father nor[sic] Mother.

*Id.* at 15-16 (footnote omitted).

Ms. Geissinger testified that the Child is unsafe in Father's home, and that the Child's relationship with Father is not good. (Notes of testimony, 3/24/17 at 22.) Ms. Geissinger stated the Child has threatened to run away and self-harm if she were to be returned to Father's home. (*Id.*) Ms. Geissinger further testified that Father told her that he has had trouble managing the Child at home without services. (*Id.*) Ms. Geissinger added that Father works outside the home, Father's girlfriend would be the caregiver for the Child, and that Father's girlfriend is in need of drug and alcohol services. (*Id.*) Additionally, the Child testified that she was not getting regular medical and dental care while she was living with Father. (*Id.* at 29.)

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *See In re M.G.*, 855 A.2d 68 at 73-74 (Pa.Super. 2004). Accordingly, we find that the trial court's order directing continuing dependency is supported by sufficient, competent evidence in the record.

Next Father argues the trial court erred in finding that the Child's placement was appropriate when CYS failed in its duty to ensure that the Child's educational, behavioral, and mental health needs were met. (Father's brief at 22.)

At the March 24, 2017 hearing, Ms. Geissinger testified that CYS is looking to find a therapeutic program for the Child and Father that would help them reunite. (Notes of testimony, 3/24/17 at 7.) Ms. Geissinger continued that the Child is afraid of Father, and has refused visits with him at CYA. (*Id.*) Ms. Geissinger further testified she was able to find a foster home for the Child, which would be able to do outpatient counseling, as recommended by Dr. Saba. (*Id.*) Ms. Geissinger opined that she would not recommend that the Child return to Father's home because of the Child's fear, and that Child would not be safe if she returned to Father's home. (*Id.*) Ms. Geissinger outlined the Child's permanency plan as follows:

> [T]he goals in the plan are to have frequent and positive visitation with [the Child], that [the Child] attend a mental health evaluation and participate in any treatment that is needed, to demonstrate stable mental health and attend and pass her cases, and to participate in drug and alcohol [counseling] as needed because there were reports of marijuana use, and to not self-harm herself [sic].

*Id.* at 9.

Ms. Geissinger concluded that the CYS recommendation was to continue the Child's dependency, and for the Child to remain in CYS custody for placement in a residential setting, pending an opening in foster care. This recommendation was based on the Child's refusal to return home, fear of Father, and the Child has not completed proper therapy that would allow her to return home. (*Id.* at 11.)

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re M.G.*, 855 A.2d at 73-74. Accordingly, we find that the trial court's finding that the Child's placement is proper is supported by sufficient, competent evidence in the record.

For his third issue, Father argues the trial court erred by not returning the Child to Father's custody when it was the least restrictive means of providing protection for the minor Child, contrary to the mandates of the Child Protective Services Law and the Juvenile Act.[2] (Father's brief at 26.) Father maintains that no evidence was presented at the permanency review hearing establishing that it would be unfeasible to return the Child to Father's care with in-home and/or outpatient mental health and family therapy in place. (*Id.* at 28.) Father also asserts that the trial court failed to consider any alternative disposition as required, or provide any reasoning for rejecting that possibility. (*Id.*)

Section 6301 of the Juvenile Act sets forth the purpose of the Act, in relevant part, as:

> **(b)** **Purposes.--**This chapter shall be interpreted and construed as to effectuate the following purposes:
>
> (1) To preserve the unity of the family whenever possible or to provide

---

[2] In his brief, Father cites that the purpose of the Juvenile Act is set forth in Section 6302(b)(1) of the Juvenile Act, which appears to be a typographical error.

another alternative permanent family when the unity of the family cannot be maintained.

(1.1) To provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter.

. . . .

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety, by doing all of the following:

(i) employing evidence-based practices whenever possible and, in the case of a delinquent child, by using the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child; . . .

42 Pa.C.S.A. § 6301(b)(1), (b)(1.1), (b)(3)(i).

The Child Protective Services Law ("CPSL") charges county agencies with providing services consistent with the goals of the agency as follows:

(a) **Program objectives.--**Each county agency is responsible for administering a program of general protective services to children and

youth that is consistent with the agency's objectives to:

(1)     Keep children in their own homes, whenever possible.

(2)     Prevent abuse, neglect and exploitation.

(3)     Overcome problems that result in dependency.

(4)     Provide temporary, substitute placement in a foster family home or residential child-care facility for a child in need of care.

(5)     Reunite children and their families whenever possible when children are in temporary, substitute placement.

(6)     Provide a permanent, legally assured family for a child in temporary, substitute care who cannot be returned to his own home.

(7)     Provide services and care ordered by the court for children who have been adjudicated dependent.

23 Pa.C.S.A. § 6373(a).

The trial court opined:

This [c]ourt believes it is [the least restrictive placement] for several reasons. First, the Child is in need of psychotherapy which she has not adequately received while living with either parent. Secondly, the Child refuses to return to Father's residence. Since neither parent has provided the mental health help the Child needs[,] and the Child refused to return to her Father, returning the Child home would not serve the purposes of the Juvenile Act insofar as placing her in a setting that addresses her mental,

emotional, and physical well-being. Further, since the Child is in need of therapy, therapeutic foster care is the least restrictive [placement].

Trial court opinion, 5/10/17 at 17.

At the hearing, Ms. Geissinger testified that residential placement would be the least restrictive placement for Child at the time of the hearing. (Notes of testimony, 3/24/17 at 11.) Ms. Geissinger continued, "pending an opening in the foster home through NHS, that would be the least restrictive until possibly a family member would come forward." (*Id.*)

We note that this court stated, "it is not for this [C]ourt, but for the trial court as fact finder, to determine whether [a child's] removal from [his/]her family was clearly necessary." *A.N. v. A.N.*, 39 A.3d 326 (Pa.Super. 2012), quoting *In the Interest of S.S*., 651 A.2d 174, 177 (Pa.Super. 1994). Upon review, the record supports the trial court's finding that Child's placement in therapeutic foster care is the least restrictive means to meet her needs. We find that there was sufficient evidence to allow the trial court to make a determination of Child's needs and appropriateness of placement.

Father's fourth issue is whether the trial court erred in granting the recommendations of CYS in that the recommendations are contrary to the Juvenile Act, Section 6301(b)(1), which states that one of the purposes is to

preserve the unity of the family whenever possible.[3] (Father's brief at 38.) Father argues that there is overwhelming evidence in the record showing that CYS has not provided reunification services as required by statute. (*Id.* at 39.)

The relevant portion of the Juvenile Act specifies the purpose of the Act is "[t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S.A. § 6301(b)(1). This court has held "[t]he state's interest in preserving family unity must be weighed along with the state's interest in protecting children, and a child's right to a healthy and stable environment." *In Re: M.E.P.*, 825 A.2d 1266, 1276 (Pa.Super.2010) (internal citation omitted).

The trial court found that CYS attempted to reunify the family by encouraging the Child to visit with Father while she was in placement during the period of time between the dependency adjudication and the permanency review hearing. (Trial court opinion, 5/10/17, 18-19.) The trial court also found CYS encouraged the Child to participate in counseling with Father in an attempt to mend the relationship, but that the Child refused to participate. (*Id.*) The trial court concluded that to force the Child to live with Father and engage in counseling with him would be counterproductive.

---

[3] We again note that Father appears to have made a typographical error in his brief, and defer to heading of Father's argument, rather than the body to determine the appropriate Section of the Juvenile Act.

(*Id.* at 19.) The trial court maintained that all attempts and efforts to preserve the family unit were exhausted through October 7, 2016, when the Child was initially removed from Father's care. (*Id.* at 21.)

At the hearing, the Child testified that she thinks she will do well in a foster placement. (*Id.* at 26.) The Child further testified that she does not have a good relationship with Father, and does not think she can forgive him for "what he has done." (*Id.* at 28.) The Child stated that CYS has told her she should try to repair her relationship with Father, but that she does not think that would be possible. (*Id.* at 29.) Ms. Geissinger testified that the Child is "working with Victims' Resource Center with an advocate and is having a hard time talking about things and trying to reunite with [Father]." (*Id.* at 8.)

Upon review, the record supports the trial court's finding that reunification at the time of the permanency review hearing would be counterproductive, and that continued dependency was appropriate.

Next, Father asks this court to determine whether the trial court erred by finding that CYS exercised reasonable efforts to preserve or reunify the family when there was undisputed evidence that no services were made available and no reunification efforts were made by CYS. Father argues that CYS failed to present any evidence that it provided the statutorily mandated

services required by Section 6374(f) of the CPSL to reunify the family.[4] (Father's brief at 15.)

The CPSL Section 6373(b) states:

> **(b)** **Efforts to prevent need for removal from home.--**In its effort to assist the child and the child's parents, pursuant to Federal regulations, the county agency will make reasonable efforts prior to the placement of a child in foster care to prevent or eliminate the need for removal of the child from his home and to make it possible for the child to return to home.

23 Pa.C.S.A. § 6373(b).

In its opinion, the trial court reiterated its rationale for finding that the Child's placement in therapeutic foster care was the least restrictive placement to meet the Child's needs. (Trial court opinion, 5/10/17 at 18.) The trial court concluded that reunification is premature. (***Id.***)

Upon review, the record supports the trial court's decision not to reunite Father and the Child, and we do not find that the trial court violated the CPSL. There was sufficient evidence to allow the trial court to make a determination of the Child's needs and inappropriateness of reunification.

Father's sixth issue asserts that the trial court erred in finding that Father had made minimal progress toward alleviating the circumstances that

---

[4] In his brief, Father cites that the requirements of the CPSL can be found at Section 6374(f) which appears to be a typographical error. We defer to the trial court's decision to analyze Father's argument pursuant to Section 6373(b) of the CPSL.

necessitated the Child's placement because Father is unable to complete his goals without health insurance. (Father's brief at 15.) Father maintains that he was willing and able to pay for treatment out-of-pocket until the insurance for the Child can be resolved. (*Id.* at 34.) Father continues that it is improper to hold Father accountable for CYS' failure to assist Father in obtaining medical assistance for the Child as required by Section 6373(c) of the CPSL. (*Id.* at 35-36.)

At the hearing, Ms. Geissinger testified that Father's goals were to participate in visitation with the Child, demonstrate proper parenting in the home and with the Child, demonstrate sober caretaking and counseling, positive coping skills due to the reports of violence, and to cooperate with CYS. (Notes of testimony, 3/24/17 at 9-10.) Ms. Geissinger continued that there has been minimal compliance with the Child's permanency plan because the Child refuses to do anything to rebuild her relationship with Father. (*Id.* at 10.)

Father testified he lost his insurance in July of 2016. (*Id.* at 44.) Father stated he reapplied for Medicaid, but his application was denied because of incomplete financial documents. (*Id.*) Yet Father maintains that he had the financial documents and must reapply again. (*Id.* at 44-45.) Father predicted that it will take a while before he has Medicaid. (*Id.* at 45.) Father further testified that he will do whatever it takes, even going out-of-pocket to pay for counseling. (*Id.*)

The trial court found that Father did not arrange to get the Child counseling while the Child was living with Father, nor was he able to secure therapy for the Child by the time of the dependency hearing. (Trial court opinion, 3/24/17 at 19.) The trial court states that one of the reasons Father was unable to secure therapy for the Child was his lack of insurance. (*Id.*) The trial court continues that the more important reason why it found Father's compliance to be minimal is that the Child is refusing contact with Father. (*Id.*) The trial court maintained that, perhaps through no fault of his own, Father cannot make progress in having the Child returned to his care when the Child has no desire to return home, and that progress is minimal in alleviating the circumstances of the Child's removal, which is the lack of a relationship with Father. (*Id.* at 19-20.)

Finally, Father argues that the trial court erred by not determining a likely date for reunification of Father and the Child as required by the Juvenile Act, 42 Pa.C.S.A. § 6351(f.1)(1). (Father's brief at 16.) Father maintains the permanency review order of March 24, 2017, contains no date by which the goal of reunification of the Child with Father might be achieved. (*Id.* at 37.) Father contends that the omission of this date is not a "harmless error," but actually constitutes a goal change from reunification without the benefit of a hearing. (*Id.* at 38.)

In relevant part, the Juvenile Act reads

> **(f.1) Additional determination.--**Based upon the
> determinations made under subsection (f) and

> all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> > (1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1)(1).

In its opinion, the trial court stated:

> Father is correct that this [c]ourt did not identify a date by which the Child might be returned home to a parent. This [c]ourt agrees that both 42 Pa. C.S.A. § 6351(f)(5) and Pa. R.J.C.P. 1608(D)(1)(d) require it. However, this [c]ourt finds that the failure to do so is justified. Conversely, if it is not justified, it is a harmless error under the circumstances.
>
> This [c]ourt has identified a likely return date as "unknown." The basis for this is clear: it is totally unpredictable as to when this Child, wrought with a mental health diagnosis and refusing to return to either parent, may in fact return to a parent. No one can project when the psychotherapy may get to the point where the Child begins family counselling with either or both parties and when she may want to return and feel comfortable returning to a parent. Further, despite 42 Pa. C.S.A. § 6351(e)(3) requiring permanency hearings at least every six (6) months, [CYS] conducts them every three (3) months. This "likely goal" date was implemented and designed to maintain constant vigilance over a Child's progress and attain the goals recommended. Having three (3) month review hearings provides the same oversight.

Trial court opinion, 5/10/17 at 20-21.

This court has said: "[t]o hold the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." *In re S.B.*, 943 A.2d 973, 977 (Pa.Super. 2008) (citations omitted). Consequently, we find Father's argument to be without merit. The trial court's decision was reasonable and appropriate under the circumstance.

Accordingly, based on the foregoing analysis of the trial court's permanency review order, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017