J-S39017-24

2025 PA Super 17

| | | |
|---|---|---|
| IN THE INTEREST OF: M.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 616 WDA 2024 |

Appeal from the Order Entered April 24, 2024
In the Court of Common Pleas of Allegheny County Family Court at
No(s): CP-02-DP-0000050-2024

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

OPINION BY KUNSELMAN, J.: **FILED: January 24, 2025**

G.G. (Mother) appeals *pro se* from the order issued by the Allegheny County Court of Common Pleas, which adjudicated dependent her then fourteen-year-old son, M.G. (the Child), pursuant to the Juvenile Act. **See** 42 Pa.C.S.A. §§ 6302(1), 6351. After review, we affirm.[1]

We discern the following factual background from the juvenile court's opinion issued pursuant to Appellate Rule 1925(a). In 2014, when the Child was approximately 5 years old, the family was involved in a car accident in Ohio. The Child suffered a brain injury which required a shunt. The Child also had some unrelated mental health issues, including Autism, and ADHD. Sometime after the accident, the family moved to Western Pennsylvania.

Nearly a decade later, in July of 2023, law enforcement responded to the family's home for a mental health call. The responding officer reported

_____

[1] T.G. (Father) was also involved in this case, but he did not appeal.

that Mother was tethered with a medical grade tether when he arrived. According to the Child, the family began using the tether on him in July of 2023.

In August, September, and October of 2023, the Child saw a therapist for medication management. The family did not discuss their use of the tether with the therapist. Another therapist began seeing the Child in November of 2023. The second therapist developed a plan with the Child for when he was feeling anxious or escalated in his emotions. The plan did not include the use of physical restraints; again, the family did not inform the therapist that they were using physical restraints. The therapist did not observe any aggressive behavior from the Child.

On January 2, 2024, Mother called 911 and wanted the Child transported to Western Psychiatric Institute and Clinic. Mother claimed the Child had barricaded himself in the bathroom. The responding officers reported that the home was cluttered and smelled of urine. Mother provided one officer with a written safety plan. The officers saw a tether system attached to a makeshift bed which resembled a wooden bench with a cushion. An officer also saw that the doorknob on the bathroom had been removed; the family reported this was for safety reasons. The Child did not appear to be in emotional distress but was transported to the hospital. Mother reported to medical staff that the Child was attacking people and being aggressive. The Child was calm and cooperative with the attending physician. Mother gave the physician the

written safety plan which included the use of physical restraints. The physician advised that the Child needed different care and a different safety plan.

The Allegheny County Office of Children, Youth and Families (the Agency) was notified, and two Agency caseworkers and a police officer went to the home on January 4, 2024. The family did not open the door for approximately twenty minutes. When the caseworkers and police officer entered the home, the Child was not tethered but reported that he had been when they first arrived; the family reported that Mother had also been tethered. Mother provided a caseworker with a written safety plan which involved the use of physical restraints on the Child in many situations including: at night, during the Child's counseling sessions with his spiritual advisor, when the Child was angry or defiant, when he threw things, and when he could not control himself. The caseworker explained to Mother that using the tether was inappropriate and could be considered child abuse. Mother agreed to stop using the tether, and Father threw it away. However, the family had a second tether that they did not disclose.

On January 26, 2024, the Agency received a report that the Child was being tethered nightly again. The Agency obtained an Emergency Custody Authorization and removed the Child. After the Child's removal, the Agency determined several of the Child's specialist appointments had been neglected prior to his removal, including a neurosurgery examination, a neurology

examination, and an examination by the Traumatic Brain Injury Clinic. The Child's mental health treatment was also of concern.

On April 24, 2024, the juvenile court adjudicated the Child dependent and ordered that the Child remain in his foster care placement.[2] Mother timely filed this appeal. She presents six issues for our review, which we reorder for ease of disposition:

1. Did the trial court err when after the Appellee unlawfully removed the family's [C]hild from the home [in January 2024] using Judicial Deception by omission and misrepresenting the facts which violated the family's 14th Amendment rights under the United States Constitution, when the court did not verify reasonable efforts findings with the [A]gency and return the [C]hild home immediately for the duration of the proceedings when it was discovered that the [A]gency did not do their due diligence?

2. Did the court and or legal counsel err when the family was not given a fair shelter care hearing due to ineffective counsel that did not notify them of their rights and the misconduct of the hearing officer that was presiding over the case.

3. Did the trial court abuse its discretion when [it] acted in erroneous preclusion of the family's two expert witnesses by incorrectly classifying the witnesses, pursuant to 225§702, §703 and is supported by case law under *J-S46032-18 2019 Super 110 Bryan Wright*, Chanthavong, 682 A.2d at 338-39f. This did not provide the family with an equal and fair defense of their case, while also failing to act impartially on how the witnesses were determined and given credibility for both the Appell [sic] and Appellee?

---

[2] We note from the Appellant's, Agency's, and Guardian *ad litem*'s briefs that the Child's dependency case has since been closed, and the Child has been reunited with the parents. ***See*** Mother's Brief at 29, 31; ***see also*** Agency's Brief at 10; ***see also*** Guardian *ad litem*'s Brief at 12.

4. Did the Trial Court fail to ensure meaningful exercise of a *pro se* litigant's constitutional right to equal access to the courts. When pursuant to 237§1152 the court took two minutes in the hearing requesting *pro se* status and did not conduct a colloquy with the litigant as required by law? The Court also did not give the Appellant adequate time to prepare for witnesses when they did not provide discovery of evidence or witnesses in a timely manner which was a violation of the Shelter Care Court Order and 237§1340? Did the court also give the *pro se* litigant an unfair disadvantage by not having any clear procedures for evidence submission, ensuring the litigant had access to the PACFile system to ensure the litigant was getting orders and notices of the court in a timely manner and could file needed motions which did not allow the litigant to be fairly heard?

5. Did the trial court abuse its discretion and/or [err] as a matter of law or misinterpret the law, in concluding that the [Agency] established by clear and convincing evidence that a dependency existed pursuant to 42 Pa. C.S.A. 6302. Did the court misinterpret the law with regard to what constitutes child abuse in the Child Protective Services Code based on 23§6304(D) exceptions to child abuse per the child protective services code and 18§509 (Commonwealth v. Shayla Lynette Pierce, CP-22-CR-0000759-2018) per the Pennsylvania criminal code. These codes state clearly what is and is not appropriate parental discipline or control of a minor child by a parent?

6. Did the court err in finding that the [Agency] made reasonable efforts to prevent or eliminate the need for removal from the home. The [A]gency is required to provide services to families pursuant to 62§2172, §2174, 55§3130.61, §3130.66, §3130.67, §3130.12(4)(c)(1)(3), §3490.57(f) (1-4), §3490.61(a)(c)(1), 23§6373, 42§6301(b)(3). Did the court fail to ask [the A]gency to verify what services have been tried to help the family?

Mother's Brief at 3-6.

Before addressing Mother's issues, we must first determine whether they are properly before us. The juvenile court and the Agency urge us to

find all Mother's issues waived under Pa.R.A.P. 1925. Mother's first Rule 1925(b) statement was eighty-one pages, and her amended statement was thirty-nine pages. The Agency filed a motion to dismiss for each of Mother's 1925(b) statements. We denied both motions. While we agree that Mother's amended Rule 1925(b) statement contains "lengthy explanations" not appropriate in a Rule 1925(b) statement, our review of the statement reveals that Mother raised six issues for appellate review in her summary of errors on page three. **See** Amended Pa.R.A.P. 1925(b) Statement at 3; **see also** Pa.R.A.P. 1925(b)(4)(iv). Given Mother's *pro se* status, the juvenile court analyzed Mother's issues to the best of its ability. T.C.O. at 8.

We decline to find all issues waived based on her voluminous Rule 1925(b) statement. However, as explained below, we find that Mother's first four issues warrant no relief. Her first issue is waived as untimely. Her second issue is not subject to appellate review. Mother also waived her third and fourth issues on appeal. Additionally, we caution Mother that a Rule 1925(b) statement is not the place for lengthy explanations or argument. Mother's *pro se* status affords her no special benefit, and she must comply with the Rules of Appellate Procedure. **See Commonwealth v. Vurimindi**, 200 A.3d 1031, 1037-38 (Pa. Super. 2018) (citations omitted).

Mother's first issue is waived because she failed to raise a timely objection to defects in the application for emergency custody. She presents her first issue as a violation of the family's 14th Amendment rights in her

statement of issues. However, her arguments concern the Agency's completion of the emergency application for removal. Mother argues that the Agency incorrectly and incompletely filled out the application for emergency protective custody. Mother's Brief at 75. Mother asserts that if the Agency had given accurate information in the application, then the juvenile court would not have entered an order for emergency removal. *Id.* at 79. She also claims that she did not have access to this information until after adjudication and shortly before filing the appeal because she did not have access to PACFile and was not provided with the Agency's Application. *Id.*

Rule 1126 of the Pennsylvania Rules of Juvenile Court Procedure provides:

> A child shall not be released, nor shall a case be dismissed, because of a defect in the form or content of the pleading or a defect in the procedures of these rules, unless the party raises the defect prior to the commencement of the adjudicatory hearing, and the defect is prejudicial to the rights of a party.

Pa.R.J.C.P. 1126.

Here, Mother did not object to any defect in the application prior to the adjudicatory hearing. Moreover, Mother was represented by counsel at the shelter care hearing, and counsel made no objection to the contents of the application nor claimed that Mother did not receive the Agency's Application.

Thus, Mother's claim that the application was defective or that her family's 14th Amendment rights were violated is waived.[3]

Mother's second issue challenges the conduct of the hearing officer at the shelter care hearing held on January 31, 2024, with the order docketed on February 5, 2024. T.C.O. at 15; *see also* Mother's Brief at 80. This order is not subject to appellate review as it is only a temporary order, to protect the child's best interests and welfare, pending a final adjudicatory hearing.[4]

If a court determines that allowing a child to remain in their home would be contrary to the child's welfare, the court can enter a protective custody order authorizing the child's removal from their home. *See* 42 Pa.C.S.A. § 6324(1). Once the child is removed, a shelter care hearing must be held within 72 hours of removal. *See* 42 Pa.C.S.A. § 6332(a); *see also* 23 Pa.C.S.A § 6315(d). The shelter care hearing is intended to be an "informal

---

[3] Mother also did not claim prejudice by the alleged defective application. She attended all hearings, was aware of the allegations against her and presented defenses to the dependency petition.

[4] Even if we found Mother's second issue to be subject to appellate review, we note that Mother failed to fully develop this issue on appeal. She included only three sentences in the Argument of Appellant section of her brief related to purported "judicial misconduct" by the hearing officer. *See* Mother's Brief at 80. As such, even if this issue was properly before us, we could potentially find it waived due to lack of development. *See, e.g., Interest of R.H.*, 320 A.3d 706, 716 (Pa. Super. 2024) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'") (quoting *Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 924 (2009)).

hearing," and its main purpose is to determine where the child should be placed pending a formal adjudicatory hearing. ***See*** 42 Pa.C.S.A. § 6332(a); ***see also*** 23 Pa.C.S.A § 6315(d); ***see also*** Administrative Office of Pennsylvania Courts Office of Children and Families in the Courts, *Pennsylvania Dependency Benchbook* 6-5 (3rd ed. 2019) ("The primary purpose of the shelter care hearing is to evaluate the agency's contention that allowing the child to remain in the home would be detrimental to the child's welfare and best interests.").

Accordingly, the shelter care hearing does not comprehensively address the merits of the case. Instead, the formal adjudicatory hearing addresses the merits, and that hearing must be held within ten days of the filing of the dependency petition if the child is in custody.[5] ***See*** 42 Pa.C.S.A. § 6335(a); ***see also*** *Pennsylvania Dependency Benchbook*, *supra*, at 6-9 ("Since the [shelter care] hearing must take place on short notice to everyone involved (even the judge or hearing officer has little time to prepare as it is often an add-on to the schedule), witnesses and evidence may be unavailable.

---

[5] Our review of the record reveals that at the Shelter Care Hearing on January 31, 2024 and in the Shelter Care Order dated February 5, 2024, the adjudicatory hearing was scheduled for February 28, 2024, which is beyond ten days from the filing of the dependency petition on February 5, 2024. However, we note that the Hearing Officer stated on the record "[T]his will be scheduled for an adjudicatory hearing on February 28th . . . ." N.T., 1/31/24, at 57. None of the parties objected to this date, including Mother and Mother's counsel.

However, only a preliminary determination is expected until the more comprehensive adjudication hearing can occur within 10 days.").

Notably, a shelter care order does not warrant specialized review under our appellate rules. *See, e.g.,* Pa.R.A.P. 1610 (providing for specialized review of an order granting or denying release or modifying the conditions of release before sentence); Pa.R.A.P. 1612 (allowing a juvenile to file a petition for specialized review if a court enters an order placing the juvenile in an out-of-home overnight placement in any agency or institution). Unlike review of bail orders or review of out-of-home placement in juvenile delinquency cases, there is no right to specialized review of emergency custody or shelter care orders in dependency cases.

Additionally, a shelter care order is not a final, appealable order. *See Interest of T.C.*, 239 A.3d 48 (Pa. Super. 2020) (unpublished memorandum). In *T.C.,* we concluded that the shelter care order was not an interlocutory order appealable by right, nor had the mother sought permission to appeal the order. *See id.* Also, the order was not a collateral order because it was not "separable from and collateral to the main cause of action." *Id.* Instead, "the salient issue surrounding both the shelter care order and the subsequent adjudication of dependency is [the child's] best interests and whether those interests were served by [the child's] removal from his parents' home." *Id.* Thus, this Court held that the shelter care order was not immediately appealable and quashed the appeal. *Id.*

Here, Mother waited to appeal the shelter care order until the final adjudication of dependency. Mother could have requested a juvenile judge to conduct a rehearing following the hearing officer's recommendation, but she did not do so. Pa.R.J.C.P. 1191.C. Also, Mother's claim that she was not told of this option is belied by the hearing officer's written recommendation. Recommendation for Shelter Care, 1/31/24, at 3 (noting that "A party may challenge the Hearing Officer's recommendation by filing a motion with the clerk of courts within three (3) days of receipt of the recommendation.").

Once the adjudication occurs, no appeal lies from the shelter care order. The dependency rules and informal nature of the shelter care hearing assume that any defects that might occur at the shelter care hearing will be remedied at the formal adjudication of dependency. Thus, no appeal lies from the temporary shelter care order, but rather from the final dependency adjudication and disposition.[6] **See Interest of J.M.**, 219 A.3d 645, 650–51

---

[6] Temporary shelter care orders are like interim custody orders that are also not final orders subject to appeal due to their temporary nature. **See**, **e.g.**, **K.D. v. E.D.**, 267 A.3d 1215, 1222 (Pa. Super. 2021) ("As we stated in **J.M. v. K.W.**, 164 A.3d 1260, 1263 (Pa. Super. 2017) (*en banc*), 'until the trial court has rendered its best-interest determination on the merits, an interim custody order is ephemeral and subject to further modification upon petition.' Thus, an order that is intended to determine the parties' temporary status during ongoing custody litigation, and is not entered following a full evidentiary hearing, is not a final order.") (citation omitted). Shelter care orders are ultimately subsumed in the final order of adjudication of dependency and disposition. Therefore, they are not subject to appellate review, and appeal properly lies with the final dispositional order. **See Interest of J.M.**, 219 A.3d 645, 650–51 (Pa. Super. 2019) (citation omitted).

(Pa. Super. 2019) (citing *In Interest of C.A.M.*, 399 A.2d 786 (Pa. Super. 1979)). We address Mother's challenges to the Child's dependency adjudication and disposition in Mother's fifth and sixth issues below.

In her third and fourth issues, Mother alleges that evidentiary and due process violations occurred during the dependency hearing. Mother's third issue alleges that the juvenile court erred by precluding and incorrectly classifying the family's two expert witnesses. Notably, Mother did not call these witnesses to testify on her behalf. Rather, they were introduced by Father's attorney. Thus, we first question whether Mother has standing to appeal the juvenile court's rulings with respect to these witnesses. Mother asserts that this issue was preserved for appeal because Father's attorney asked for these witnesses to be heard as experts before the juvenile court. *See* Mother's Brief at 56. Mother is mistaken. **Father's** attorney arguing for these witnesses to be classified as experts does not preserve the issue for **Mother's** appeal. Our review of the record indicates that Mother minimally participated in the discussion regarding classification of these witnesses; she only spoke in support of classifying one of the witnesses as an expert and did not offer a position about the other witness. *See* N.T., 4/16/24, at 3-7, 11-12, 36. Mother also did not specifically object to the juvenile court's ultimate classification of these witnesses. *See id.* at 7, 12-13, 23-24, 36-37. Issues not raised before the juvenile court are waived and cannot be raised for the

first time on appeal. *See* Pa.R.A.P. 302(a). As such, Mother has waived this issue.

Even if Mother had not waived this issue, determination of expert witnesses is within the sound discretion of the juvenile court. *See Commonwealth v. Poplawski*, 130 A.3d 697, 718 (Pa. 2015) (citation omitted). Thus, our standard of review is limited to whether the juvenile court abused that discretion. *See id.* "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Interest of M.R.*, 247 A.3d 1113, 1121 (Pa. Super. 2021) (quoting *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003)).

Our review of the record reveals that the juvenile court engaged in a lengthy *voir dire* process for both witnesses. The court allowed one witness to testify as an expert on confinement but not on tethering, and the court allowed the other witness to testify as a lay person. Both witnesses testified extensively. We discern no abuse of discretion regarding the classification of the witnesses as expert or not, and the record supports the juvenile court's decision. Thus, Mother's third issue would merit no relief.

Mother's fourth issue alleges, in part, that the juvenile court "fail[ed] to ensure meaningful exercise of a *pro se* litigant's constitutional right to equal access to the courts." Mother's Brief at 5. This issue includes extensive detail

in the Statement of Questions Presented section of Mother's Brief. However, Mother framed the issue on the summary page of her 1925(b) statement as "The Trial Court did not ensure meaningful exercise of a litigant's constitutional right to access to the courts, so that the pro se litigant would be afforded the right to be fairly heard." Amended Rule 1925(b) Statement at 3. Mother then provided over 30 pages of lengthy explanation of her issues. The juvenile court properly declined to review those pages, as they violated Rule 1925 by including argument and explanation. *See* T.C.O. at 8; *see also* Pa.R.A.P. 1925(b)(4)(iv), (vii). The juvenile court found Mother's issue to be "incredibly vague, and the court does not have enough information to discern which specific actions or inactions Mother argues impeded her right to access the court." T.C.O. at 15. We agree with the juvenile court. A Rule 1925(b) statement "must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." *In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (citation omitted). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *S.S. v. T.J.*, 212 A.3d 1026, 1031 (Pa. Super. 2019) (quoting *Com. v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001)). Further, when a Rule 1925(b) statement is so vague that it prevents a trial court from identifying and addressing the issue to be raised on appeal, appellate review is hampered. *See id.* at 1031-32. Here, the juvenile court was unable to address this claim because it was too vague. Therefore, Mother has waived this issue.

Even if Mother had not waived this issue, we would find none of the due process claims in her brief to have merit. Mother argues that the juvenile court had no "standard of submission of evidence to allow it to be heard or to submit into evidence," and that Mother did not have access to PACFile so she was unable to submit evidence. Mother's Brief at 72-73. However, as noted above, Mother's *pro se* status conferred on her no special benefit, and she was required to follow the juvenile court's procedures. **See Vurimindi**, 200 A.3d at 1037-38 (citations omitted). The record also reflects that Mother successfully submitted evidence and asked questions at the hearing, and the juvenile court provided her with leeway. **See** N.T., 4/2/24, at 49, 108, 110, 122, 158; **see also** N.T., 4/16/24, at 98, 101-02; **see also** N.T., 4/24/24, at 21-23, 25, 27. Moreover, the court gave Mother the option of having someone else PACFile documents for her. **See** N.T., 4/16/24, at 101-02.

Additionally, Mother argues that the juvenile court violated the Rules of Juvenile Court Procedure by not conducting a colloquy when Mother decided to proceed *pro se*.[7] Although she mentions the failure to conduct a colloquy in her brief, Mother never mentioned the colloquy in her voluminous Rule

---

[7] The applicable Rule of Juvenile Court Procedure provides, in relevant part, "**B. Other parties.** Except as provided in paragraph (A), a party may waive the right to counsel if: (1) the waiver is knowingly, intelligently, and voluntarily made; and (2) the court conducts a colloquy with the party on the record." Pa.R.J.C.P. 1152.

1925(b) statement. Because Mother is raising this error for the first time on appeal, it is waived.[8] **_See generally_**, Pa.R.A.P. 302(a).

Turning to the merits of Mother's remaining issues, her fifth and sixth issues relate to the two prongs of the dependency analysis – *i.e.*, the Child's dependency adjudication and disposition.[9] Specifically, in her fifth issue,

---

[8] We note that Mother cites to a transcript from an "Audiotaped Motion to Withdraw" in which she chose to proceed *pro se* after firing her court-appointed counsel. **_See_** Mother's Brief at 73; **_see also_** Motion to Withdraw Appearance as Counsel, 2/23/24, at 3. Mother included this transcript in her reproduced record and asserts that there was not a proper colloquy because "the entire hearing was only two minutes and the only questions asked were if [Mother] wanted to proceed *pro se* and if she knew the next trial date." Mother's Brief at 73. The transcript indicates that the juvenile court confirmed with Mother that she was going to represent herself and told her that she could hire a private attorney. The court also let Mother know that representing herself could be procedurally challenging, but that the judge would help Mother through it the best he could. We do not see this transcript included in the certified record we received from the juvenile court, and thus we do not consider it for its merits. However, we find it curious that Mother has attempted to provide evidence of the very thing she asserts did not occur—a colloquy on the record. On the first day of the adjudicatory hearing, the juvenile court noted on the record that Mother was not represented and confirmed that she wanted to represent herself. N.T., 4/2/24, at 8. Mother was also aware of her right to representation, as she was represented by counsel at the Shelter Care Hearing. **_See_** N.T., 1/31/24, at 2 (noting that Mother's counsel entered an appearance on her behalf).

[9] As discussed in Footnote 2, the party's briefs indicate that the Child's dependency case has been closed and the Child reunited with the parents. The juvenile court's findings and order to that effect are not part of the certified record, and, thus, we do not consider that information for its merits. Nevertheless, closure of the dependency case and reunification would arguably make Mother's fifth and sixth issues moot. This Court has previously recognized an exception to the mootness doctrine when reviewing a dependency adjudication in which the underlying dependency case had been closed. **_See In re D.A., A Minor_**, 801 A.2d 614, 616-17 (Pa. Super. 2002)
*(Footnote Continued Next Page)*

Mother challenges the juvenile court's determination that the Agency proved the Child was dependent by clear and convincing evidence.

To adjudicate a child dependent, the court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1).

"Clear and convincing evidence" is defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

***Interest of L.V.***, 209 A.3d 399, 416 (Pa. Super. 2019) (citations omitted).

> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," ***see*** 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately

_____

(*en banc*). An exception applied in that case because the mother could have been detrimentally affected in future proceedings by the court declaring her child dependent. ***See id.*** at 617. Thus, Mother's fifth issue here regarding the Child's dependency adjudication is appropriate for our review. However, it is unclear whether Mother's sixth issue challenging the Agency's reasonable efforts before the Child's removal would fit within an exception to the mootness doctrine. Because the parties indicate in their briefs that the Child has been returned to Mother, we question whether the Child's removal could detrimentally affect Mother in future proceedings in the same way as the Child's dependency adjudication. However, we decline to find Mother's sixth issue moot because the Child's return is not verified in the certified record.

available." This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child."

*Id.* (internal citations and citation omitted).

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record; but it does not require the appellate court to accept the juvenile court's inferences or conclusions of law. *Interest of I.R.-R.*, 208 A.3d 514, 519 (Pa. Super. 2019) (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)). As such, we review for an abuse of discretion. *Id.*

Instantly, the juvenile court determined the Agency met its burden of showing that the Child was without proper parental care. The juvenile court noted that the parents tethered the Child to a makeshift bed at various times, including at night, which caused the court to have serious concerns for the Child's safety. *See* T.C.O. at 11-13. The parents also continued using the tether after explicitly being told to stop. *See id.* at 9. The court concluded:

> The parent's insistence on tethering their [C]hild to a makeshift bed for fear that he might sneak food, watch pornography on a cell phone, have an angry outburst, or throw objects, places his health, safety, and welfare at risk. For these reasons, the court found that [the Agency] has proven that the [C]hild was without proper parental care and control and that such care and control was not immediately available.

*Id.* at 13.

Mother's argument largely revolves around the alleged legality of the tether. Mother cites numerous statutes in support of her argument, and ultimately asserts:

> [T]he Trial Court erred in finding of [the Child] dependent based on the use of the tether system and should have allowed continued use of the tethering system based on the law and the fact that it was a part of a licensed therapist's treatment plan and agreed to by [the Child] who was of age to agree to his own mental health treatment.

Mother's Brief at 56 (citation omitted).

Mother's argument fails to appreciate the posture of the civil case before us. The juvenile court did not determine whether Mother acted criminally. Instead, it determined that Mother did not provide the care necessary for the Child's physical, mental, and emotional health. Our review is focused on whether the juvenile court abused its discretion in reaching its conclusions. In this proceeding, the courts are not focused on the legality of the tether. Whether the tether was legal is irrelevant to our analysis, as the juvenile court could have found the Child dependent regardless of the legality of the tether.

After review, we conclude that the juvenile court's dependency determination was supported by the record. The family tethered the Child at various times, including overnight. The juvenile court had serious concerns for the Child's safety because the tether could prevent the Child from getting help or removing himself in the case of an emergency or fire in the home. *See* T.C.O. at 12. Regardless of Mother's insistence that using the tether was legal, the court acted within its discretion when it found that restraining the

Child placed his health, safety, and welfare at risk; that the Child was without proper parental care and control; and that such care and control was not immediately available, given that the family continued tethering the Child after being told to stop. *See id.* at 9. In addition to the improper use of the tether, the Child's mental health was not being properly addressed. *See id.* at 11-13. Thus, we discern no abuse of discretion in the dependency adjudication. Mother's fifth issue merits no relief.

Mother's sixth issue relates to the second prong of the dependency analysis – *i.e.*, the Child's disposition post-adjudication. Mother argues that the juvenile court erred in finding that the Agency made reasonable efforts to prevent removal of the Child, and the court failed to "ensure that the Agency provided adequate services and help to the family to eliminate the need for continued removal." Mother's Brief at 37 (citation omitted).

In ***In re D.A.***, ***A Minor***, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.A. § 6351(a).

***Id.*** at 617 (citation omitted); ***see also In re M.L.***, 757 A.2d 849, 850-51 (Pa. 2000).

- 20 -

However, even after adjudicating a child dependent, a court may not separate that child from the parent unless it finds that the separation is clearly necessary. **Interest of N.S.**, 237 A.3d 546, 551 (Pa. Super. 2020) (citations omitted). Such necessity is implicated where the welfare of the child demands that they be taken from their parents' custody. **Id.** (citation omitted). "Clear necessity" is established when the court determines that alternatives are not feasible. **Id.** (citing **A.N. v. A.N.**, 39 A.3d 326 (Pa. Super. 2012)).

As part of its disposition analysis, the juvenile court must decide "whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home." 42 Pa.C.S.A. § 6351(b)(2). Neither federal nor Pennsylvania law defines reasonable efforts, but services for parents must directly promote the best interests of the child. **See Interest of K.M.**, 305 A.3d 116, 121 (Pa. Super. 2023) (citing **In Interest of C.K.**, 165 A.3d 935, 941-42 (Pa. Super. 2017)). By requiring reasonable efforts, "the statute recognizes that there are practical limitations to such efforts." **Id.**

As discussed above, we review dependency cases for an abuse of discretion, but we do not have to accept the juvenile court's inferences or conclusions of law. **See I.R.-R**, 208 A.3d at 519 (citation omitted). An abuse of discretion is "not merely an error of judgment, but is, *inter alia*, a manifestly unreasonable judgment or a misapplication of law." **C.K.**, 165 A.3d at 941 (citing **In re J.R.**, 875 A.2d 1111, 1114 (Pa. Super. 2005)).

As the juvenile court explained in its opinion, the Agency was involved with the family for approximately twenty-two days before removal. ***See*** T.C.O. at 8. During that time, the Agency offered to assist the family with service coordination and locating an individual therapist and gave the family contact information for Resolve Crisis Center. ***Id.*** There were some issues with the releases, which the court attributed to both the Agency and the family, but the releases were ultimately signed and distributed. ***Id.*** The court noted that the reason for the Child's original and continued removal was due to safety concerns, as the parents began using the tether nineteen days after the Agency told them to stop, and the parents continued arguing that the tether was appropriate after removal. ***See id.*** at 9. As the court explained:

> There was not a specific service or referral that [the Agency] could have made in that timespan which would have guaranteed the [C]hild's safety in the home. Even the use of crisis in-home services or a more intensive service would not have remedied the safety concern given the family's report that they had been tethering the child every night. For these reasons, the court found that [the Agency] made reasonable efforts prior to the placement of the [C]hild to prevent removal from the family home.

***Id.***

Mother argues that the Agency did not make reasonable efforts to prevent removal because the Agency had limited contact with the family between the first visit to the home and the Child's subsequent removal. ***See*** Mother's Brief at 38. Mother cites numerous statutes in support of her argument that the Agency violated the law by not providing immediate

services.  ***See id.*** at 38-39, 41, 48.  Mother also raises many issues which are irrelevant to the analysis of whether the Agency made reasonable efforts to prevent removal.[10]  Mother claims that the Agency did not present certain body camera evidence or provide it to the family.  ***See id.*** at 43-46.  She claims that removal of the Child was based on hearsay evidence.  ***See id.*** at 43-44, 47.  She also raises issues with the visitation and phone calls; and that the adjudication hearing was not timely.  ***See id.*** at 48-49.

After review, we conclude that the juvenile court did not abuse its discretion when it found that the Agency made reasonable efforts to prevent the Child's removal, and the record supports the court's finding.  The Agency had limited time to act between when it became involved with the family and when the Child was removed.  In that time, the Agency began the process of offering services, but as the court noted, no service could have guaranteed the Child's safety because the family tethered the Child at night.  Given the limited amount of time the Agency had before removal, and the safety threat the tether posed to the Child, the court did not abuse its discretion in finding

---

[10] In her arguments, Mother seemingly conflates certain things that happened after removal with evidence that the Agency did not make reasonable efforts before removal.  The issue Mother has raised for our review is whether the trial court "err[ed] in finding that the [Agency] made reasonable efforts to prevent or eliminate the need for removal from the home."  Mother's Brief at 3.  This accords with the Juvenile Act's requirement that the court finds reasonable efforts were made before entering an order of disposition.  ***See*** 42 Pa.C.S.A. § 6351(b)(2).  Thus, our analysis is solely focused on the juvenile court's finding that the Agency made reasonable efforts before removing the Child.

the Agency's efforts reasonable. Having already determined that the Child was without proper parental care, the juvenile court was not willing to risk the Child's safety by immediately returning him to his parents' care when it appeared likely that the parents would tether him again.

To conclude, we discern no error of law or abuse of discretion upon review of the juvenile court's determination that the Child was dependent, and that the Agency made reasonable efforts to prevent the Child's removal. Mother's remaining claims are either not subject to appellate review or have been waived.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/24/2025